IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

WILBURN L. BARKLEY,

     Plaintiff,

vs.                            Case No. 4:07cv266-WCS

GADSDEN COUNTY SCHOOLS,

     Defendant.

_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

This case is before me for all further proceedings upon consent of the parties and referral by Chief Judge Hinkle.  Doc. 46.  Defendant has moved for summary judgment.  Doc. 55.  The motion was accompanied by a statement of facts and a memorandum.  Docs. 56 and 57.  Plaintiff has also filed a motion for summary judgment.  Doc. 59.  Plaintiff was advised as to her responsibilities to respond to Defendant's motion for summary judgment and to support her own motion for summary judgment, and dates were set to take the two motions under advisement.  Docs. 58, 60 and 62.

Plaintiff has not filed a response to Defendant's motion for summary judgment, but her own motion will be considered in response to Defendant's motion for summary

judgment.  Defendant has filed a response to Plaintiff's motion for summary judgment.

Docs. 63-65.

**Allegations of the fourth amended complaint, doc. 17**

Plaintiff was Defendant's employee for 20 years.  Doc. 17, p. 4.  She alleges that

Defendant failed to hire her, terminated her employment, subjected her to unequal

treatment, and retaliated against her, by withholding pay raises and terminating her

employment, and that these adverse employment actions were due to her race (African-

American), color, religion, national origin (United States), and date of birth.  *Id.*, p. 3.

She brings suit under Title VII and the Age Discrimination in Employment Act (ADEA).

*Id.*, p. 4.

Plaintiff alleges that at the time of her termination, she was an "ESE[1] Self-Help

Assistant for the ESE program funded by the IDEA . . . grant."  She alleges that before

August, 2001, she work exclusively with young children "of which she gain[ed]

credentials or college credits."  Doc. 17, p. 4.  She was terminated, according to

Defendant, because she did not take the Paraprofessional Assessment Test and did not

have an Associates Degree.  *Id.*  She asserts that she

> was in a position where she was exempt from the NCLB Act [No Child Left
> Behind Act of 2001] and paraprofessional assessment.  Because she was
> in a non instructional role of assisting in personal care she was exempt
> from termination.

*Id.*  She alleges that she "was terminated because Gadsden County Schools said the

plaintiff did not take the Paraprofessional Assessment Test nor had an Associates

Degree."  *Id.*  She asserts that according "to The New Department of Education the

---

[1] Apparently "ESE" means an educational support employee as defined by FLA.
STAT. § 1012.40.  Doc. 59, p. 6.

plaintiff would be exempt from termination." *Id.* Plaintiff alleges she "was fully qualified as Self-Help paraprofessional and was exempt from paraprofessional testing and NCLB requirements." *Id.* She alleges that her job "was provided entirely by IDEA." *Id.* She alleges that she was the "most highly qualified Self-Help ESE assistant under the IDEA program." *Id.*, p. 5.

**Joint stipulation dismissing claims, doc. 54**

On December 18, 2008, the parties filed a joint stipulation agreeing that Plaintiff dismisses all claims based upon age, race, sex, national origin, and color. Doc. 54; doc. 54-2, p. 1 on ECF.[2] This stipulation was approved. Doc. 58.

As will be discussed ahead, this leaves for consideration a Title VII retaliation claim. Arguably it also leaves for consideration a claim of adverse employment action based upon Plaintiff's religion since religion was not mentioned in the stipulation for dismissal.

**Legal standards governing a motion for summary judgment**

On a motion for summary judgment Defendants initially have the burden to demonstrate an absence of evidence to support the nonmoving party's case. <u>Celotex Corporation v. Catrett</u>, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2553-54, 91 L.Ed.2d 265 (1986). If they do so, the burden shifts to the Plaintiff to come forward with evidentiary material demonstrating a genuine issue of material fact for trial. *Id.* Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts,

---

[2] Documents filed in this case have been filed on the electronic case filing docket (ECF). The computer assigns docket numbers and page numbers, and those numbers differ in places from the numbers on the paper document. In this order, as needed I have cited the paper document number and page numbers first, and then the electronic docket numbers.

Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), and a "scintilla" of evidence is insufficient. There must be such evidence that a jury could reasonably return a verdict for the party bearing the burden of proof. Anderson v. Liberty Lobby, 477 U.S. 242, 251, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted). However, "the evidence and inferences drawn from the evidence are viewed in the light most favorable to the nonmoving party, and all reasonable doubts are resolved in his favor." WSB-TV v. Lee, 842 F.2d 1266, 1270 (11th Cir. 1988); Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999) ("We are required to resolve all reasonable inferences and facts in a light most favorable to the nonmoving party.").

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), cert. denied 522 U.S. 1126 (1998), quoting Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

Local Rule 56.1(A) provides that a motion for summary judgment "shall be accompanied by a separate, short and concise statement of the material facts as to

which the moving party contends there is no genuine issue to be tried.  Failure to submit

such a statement constitutes grounds for denial of the motion."  The Local Rule also

provides that the statement "shall reference the appropriate deposition, affidavit,

interrogatory, admission, or other source of the relied upon material fact, by page,

paragraph, number, or other detail sufficient to permit the court to readily locate and

check the source."  The Local Rule provides that the party opposing the motion shall

serve a similar statement of material facts as to which the party contends there is a

genuine issue to be tried, using the same format.  Finally, the Local Rule provides that

the movant's properly filed statement of undisputed facts will be deemed to be admitted

if supported in the record, unless controverted by the opposing party in the manner

specified by the Rule.  *See* Jones v. Gerwens, 874 F.2d 1534, 1537 n.3 (11th Cir. 1989)

(plaintiff's failure to controvert defendants' statement of undisputed facts filed in

compliance with a similar local rule of the Southern District of Florida constituted an

admission that such facts were not disputed for summary judgment purposes.)

**Rule 56(e) evidence**

Plaintiff did not file any Rule 56(e) evidence.  Thus Defendant's evidence is

undisputed.

Defendant hired Plaintiff as an instructional assistant in the Pre-K, Head Start

program, on October 21, 1985.  Doc. 56, ¶ 1; deposition of Plaintiff, vol. 1, p. 18, doc.

56-2, p. 3 on ECF.  The No Child Left Behind Act (NCLB) became law in 2001, and

Plaintiff became aware of that legislation soon thereafter.  Doc. 56, ¶ 6; deposition, vol.

1, p. 84; doc. 56-2, p. 18 on ECF.

Defendant states:

> Based on guidance from the Florida Department of Education and the
> language of the NCLB, paraprofessionals providing educational services
> were required by the NCLB to have either an associate degree or higher,
> two years of study at an institution of higher learning, or a minimum
> passing score of 464 on the ParaPro Assessment Test (Test) and
> associated training in order to be considered highly qualified.

Doc. 56, ¶ 7 and affidavit of Dianna Decker, ¶ 2.  Attached to this affidavit is a

memorandum from the Florida Department of Education dated February 26, 2003, to all

Florida District School Superintendents.  Exhibit A to the affidavit; doc. 56-4, p. 6 on

ECF.  The memorandum advises that "a public school teacher who is providing services

to eligible private school students must meet the educational requirements."  *Id.*; doc.

56-4, p. 7 on ECF.  The memorandum further states that one of the following

educational requirements must be met:  an associates or higher degree, two years of

study at an institution of higher education, or a rigorous state or local assessment of

knowledge of and the ability to assist in instruction in reading, writing, and mathematics

or reading readiness, writing readiness, or mathematics readiness.  *Id.*  The

memorandum states that the "Educational Testing Service Parapro Assessment" was

an acceptable test to meet the third requirement.  *Id.*

On February 5, 2002, the School Board of Gadsden County sent a letter to its

"paraprofessionals" quoting the text of "the new Title I legislation," which is identical in

wording to the wording set forth above in the Department of Education memorandum.

Exhibit B to the affidavit; doc. 56-4, p. 9 on ECF.  On September 27, 2002, the

Superintendent of the Gadsden County Schools sent a memorandum to school

employees that set forth the same requirements.  Exhibit C to the affidavit; doc. 56-4, p.

11 on ECF.  The memorandum explained that these requirements were imposed by the

No Child Left Behind Act of 2001, and provided for a signature of the employee. *Id*. On February 14, 2005, the Superintendent reminded all employees of these requirements to be "highly qualified" had to be satisfied by January 8, 2006. Ex. C to the affidavit; doc. 56-4, p. 14 on ECF.

In the course of complying with the No Child Left Behind Act, Defendant reclassified employment positions as explained by Dianna Decker:

> 9. During the certification process certain district paraprofessional positions were reclassified to more accurately reflect that those positions entailed only personal care services for students and not educational services. Prior to the requirements of the NCLB, these employees were broadly classified as instructional aides, but in actuality they were not providing educational services. Thus, these positions were reclassified to prevent confusion after the enactment of the NCLB. As such, the employees occupying those positions were not required to meet the paraprofessional requirements of the NCLB, as the NCLB defines paraprofessionals as staff providing educational services.

> 10. The District believed that the paraprofessional position that Ms. Wilburn Barkley occupied did provide educational services and therefore could not be reclassified.

> 11. To remain in a paraprofessional position providing educational services at the District, Ms. Wilburn Barkley had to meet the requirements of the NCLB.

Affidavit of Dianna Decker, ¶¶ 9-11, doc. 56-4, pp. 3-4.

Plaintiff elected not to take the "Educational Testing Service Parapro Assessment" test because she believed the test had nothing to do with her being highly qualified. Doc. 56, ¶ 10; deposition, vol. 1, pp. 44-46, 67, 105-108, doc. 56-2, pp. 14-17, 25-28; deposition, vol. 2, p. 26, doc. 56-3, p. 17. She determined that she was one of the employees excluded from complying with the No Child Left Behind requirements. Deposition, vol. 1, pp. 101, 105, doc. 56-2, pp. 21, 25. Plaintiff acknowledged that no

one told her that she was exempt from the requirements of the No Child Left Behind Act.  Deposition, vol. 2, p. 6, doc. 56-3, p. 4.  Plaintiff said that she worked "as a self-help paraprofessional, non-instructional, where I was exempt under the No Child Left Behind Act."  *Id.*  She explained:

> This document that was submitted, it showed right here clearly, paraprofessionals who work solely in non-instructional roles are not required to meet one of the qualifications requirements shown above but must have a secondary school diploma or its equivalent.  And there, the first thing that it shows there is personal care services, foremost. Secondary, they stated parent involvement activities, those that worked in food service, playground and cafeteria supervision, paraprofessionals that worked in clerical duties, non-instructional, non-instructional computer assistance, non-instructional media center/library supervision, and also translators not providing instructional support.

*Id.*, p. 7, doc. 56-3, p. 5.  Plaintiff thought that "had I ever worked in a self-help position, that I would have been exempt . . . ."  *Id.*, p. 13, doc. 56-3, p. 10.  Plaintiff said that Defendant required "all paraprofessionals receive an A.A. degree to keep their employment," and "went above and beyond the No Child Left Behind."  *Id.*, p. 8, doc. 56-3, p. 6.

Plaintiff testified that in 2000, she was working with infants and "toddlers," and then was transferred to work with students in kindergarten and first grade.  Deposition, vol. 1, p. 27, doc. 56-2, p. 5.  In that job, she worked with students "with reading and writing phonics, reading comprehension, [and] math, science . . . ."  *Id.*  She then was assigned to Wind Rush Academy, where she worked with older children and some adults.  *Id.*, p. 28, doc. 56-2, p. 6.  There, she tried to help the students with reading and math.  *Id.*  In about 2003 or 2004, she was assigned to George Munroe school to work with students "with particularly special needs that needed extraordinary care."  *Id.*, pp.

33-34, doc. 56-2, pp. 8-9.  None of the students could walk or talk, and all were in wheelchairs.  *Id.*, pp. 35-37, doc. 56-2, pp. 10-12.  Plaintiff was at Shanks Middle School from 2004 to July of 2006.  *Id.*, p. 38, doc. 56-2, p. 13.  She worked with a blind student there.  *Id.*  On October 21, 2005, Plaintiff completed an "Educational Paraprofessional Status Survey."  Deposition, vol. 1, p. 103 and exhibit 4, doc. 56-2, pp. 23, 30.  She said: "I got this document [the survey] when I was in ESE and, as I stated, it asks current position."  Deposition, vol. 1, p. 103, doc. 56-2, p. 23.  She said on the survey:

> I co-teach reading assisting in the diagnosis of reading deficiencies, . . . . I ensure students [receive] 120 <u>minutes</u> of reading instruction daily.  I utilize phonics, phonemic awareness, model fluency, vocabulary, aid students to comprehend what they are reading.

Deposition, vol. 1, exhibit 4, doc. 56-2, p. 30 (emphasis in original).

Plaintiff submitted materials to Defendant for consideration of whether she met the "highly qualified statutes," but "the materials did not meet the criteria established by the District.  For example, she did not provide information from training providers that translated her training into college credit and the District had no method for making that translation for Ms. Barkley."  Doc. 56, affidavit of Dianna Decker, ¶ 7, doc. 56-4, p. 3.

On March 26, 2006, Plaintiff was informed in writing that she would not be recommended for employment for the next school year because she had failed to comply with the No Child Left Behind requirements.  *Id.*; doc. 56-4, p. 15 on ECF.

On September 6, 2006, after she was terminated, Plaintiff submitted a certification that she had taken 120 hours of training as a Child Development Associate "at the University of Florida: IFAS: Gadsden County Extension Service."  Affidavit of Dianna Decker, exhibit D, doc. 56-4, p. 18.

On November 17, 2006, Plaintiff signed a charged of discrimination with the

Equal Employment Opportunity Commission alleging discrimination based upon race

and age; this was the only charge that she filed with the E.E.O.C.  Doc. 56, ¶ 18;

deposition, vol. 2, pp. 13-15 and exhibit B, doc. 56-3, p. 38.  Plaintiff alleged in her

E.E.O.C. charge of discrimination:

> I was employed by the above named school system for about twenty
> years as an Educational Paraprofessional.  During that time, I performed
> my duties in an exemplary manner and was not the subject of discipline
> regarding my work.  Thus, I was surprised when I received a letter from
> the superintendent in March 2006 stating that I would be discharged at the
> end of the school year because I failed to comply with the educational
> requirements of No Child Left Behind.  In fact, I more than meet the
> qualifications, something I tried to explain to the superintendent and
> education director, to no avail.  I was discharged on July 31, 2006.  Since
> then I have meticulously compiled proof of my high qualification under No
> Child Left Behind.  To date, however, I have not been returned to my
> position.  Younger and non-black employees have been treated
> preferentially in that many were rehired into non-instructional capacities
> and others continue the teaching duties despite not meeting the
> qualifications.

Deposition, Ex. B, doc. 56-3, p. 38.  Plaintiff asserted discrimination due to her race and

age.  *Id.*  The charge form had a block for a claim of retaliation or discrimination based

upon religion, but Plaintiff did not mark those blocks.  *Id.*

Plaintiff explained the specifics of her claim of retaliation in her deposition.  She

said that Defendant retaliated against her by failing to "work out a solution."  Deposition,

vol. 2, p. 19, doc. 56-3, p. 14.  She said that "every time we meet for a deposition, that's

another slap to me that I consider retaliation."  *Id.*  Plaintiff said that the fact that

Defendant elected not to follow the No Child Left Behind Act, and refused to agree with

her that the position she held was exempt from the educational requirements of the No

Child Left Behind Act and terminated her employment, was retaliation.  *Id.*, p. 24, doc.

56-3, p. 15.  She said: "Gadsden County Schools retaliated against me because I did not take the paraprofessional test."  *Id.*, pp. 26, 39, doc. 56-3, pp. 17, 23.  She said she had been retaliated against because Defendant's agents knew that she "was being hit, slapped, throwed at with – and hit with stones, pebbles," all by students.  *Id.*, p. 30, doc. 56-3, p. 18.  She said she was retaliated against because she reported this student abuse and "nothing was going to even be done about it."  *Id.*, p. 31, doc. 56-3, p. 19. She said she was retaliated against because Defendant was "having me teach the class," and she "was not a teacher."  *Id.*  Plaintiff said that Defendant retaliated by refusing to pay her unemployment compensation, and for initially denying payment for her sick leave.  *Id.*, pp. 76-78, doc. 56-3, pp. 31-33.  Plaintiff defined an act of retaliation as "when someone has struck back at you for what they purport that they did to them or wronged them."  *Id.*, p. 80, doc. 56-3, p. 34.

**Legal analysis**

### The remaining claims

*Pro se* complaints should be held to less stringent standards than those drafted by an attorney.  Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986) (citing Haines v. Kerner, 404 U.S. 519, 520-521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972)).  I have reread Plaintiff's attempt to amend her complaint to try to understand the claim or claims remaining.[3]  Doc. 48-2.  In that document, Plaintiff sought to claim "wrongful termination" and retaliation.  Doc. 48-2, p. 2.

---

[3] I had denied this amendment because Plaintiff did not seek leave to amend and as a motion for leave, the motion was untimely.  Doc. 52.

The only "wrongful termination" claims that might arise are the claims originally alleged in the fourth amended complaint.  Doc. 17.  The claims were brought as claims of racial and age discrimination under Title VII and the Age Discrimination in Employment Act.  The No Child Left Behind Act is not a basis for any potential wrongful termination claim by Plaintiff.  The Act was enacted for the benefit of parents and students, and while it is questionable whether the Act confers an individual right of action upon parents and students, a teacher seeking employment with a school district has no individual cause of action under the Act.  Dunleavy v. New Jersey, 2007 WL 3024535, **2, 251 Fed.Appx. 80, *83 (3rd Cir. Oct 16, 2007) (not selected for publication in the Federal Reporter, No. 07-1058), cert. denied, 128 S.Ct. 1483 (2008).[4] Likewise, a contractor alleging wrongful termination of a contract to provide services to a school district under the Act has no standing to seek relief under the Act, even if parents and children have an individual right to bring suit.  Alliance For Children, Inc. v. City of Detroit Public Schools, 475 F.Supp.2d 655, 663-663 (E.D. Mich. 2007).   By dismissing the age and race claims, Plaintiff effectively dismissed any wrongful termination claim.

This leaves for consideration Plaintiff's claim of retaliation.

Title VII . . . prohibits retaliation against an employee "because [s]he has opposed any practice made an unlawful employment practice by [Title VII], or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing [thereunder]."  42 U.S.C. § 2000e-3(a).  A prima facie case of retaliation under Title VII requires the plaintiff to show that: (1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action.

---

[4] A copy of this unpublished opinion is attached as Attachment A.

Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008); Butler v. Alabama Dept. of

Transp., 536 F.3d 1209, 1212-1213 (11th Cir. 2008).

This also arguably leaves for consideration a claim that Defendant terminated

Plaintiff, or otherwise subjected her to adverse employment conditions, due to her

religion.  This claim is potentially still present since religion was not mentioned in the

stipulation for dismissal.

**Plaintiff's E.E.O.C. charge**

"Timely filing a charge of discrimination is a prerequisite to bringing suit under

both Title VII and the ADA."  Maynard v. Pneumatic Products Corp., 256 F.3d 1259,

1262 (11th Cir. 2001) (citations omitted); Delaware State College v. Ricks, 449 U.S.

250, 256, 101 S.Ct. 498, 503, 66 L.Ed.2d 431 (1980), *quoting* 42 U.S.C. § 2000e-5(e).

> A plaintiff's judicial complaint is limited by the scope of the EEOC
> investigation which can reasonably be expected to grow out of the charge
> of discrimination.  *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th
> Cir.1970) (Title VII complaint may encompass discrimination like or related
> to allegations contained in the EEOC charge and growing out of such
> allegations during the pendency of the case before the Commission.)

Mulhall v. Advance Sec., Inc., 19 F.3d 586, 589 n.8 (11th Cir.), *cert. denied*,  513 U.S.

919 (1994).

> [T]he crucial element of a charge of discrimination is the factual statement
> contained therein.  Everything else entered on the form is, in essence, a
> mere amplification of the factual allegations. The selection of the type of
> discrimination alleged, *i.e.*, the selection of which box to check, is in reality
> nothing more than the attachment of a legal conclusion to the facts
> alleged.  In the context of a statute like Title VII it is inconceivable that a
> charging party's rights should be cut off merely because he fails to
> articulate correctly the legal conclusion emanating from his factual
> allegations.

Sanchez v. Standard Brands, Inc., 431 F.2d 455, 462 (5th Cir. 1970).

Plaintiff's E.E.O.C. charge in this case did not allege that Defendant had committed the specific acts of retaliation that she described in her deposition.  Instead, the E.E.O.C. charge simply alleged that she was surprised that she had been terminated because, she asserted, she met the No Child Left Behind qualifications.  She alleged that "[y]ounger and non-black employees have been treated preferentially in that many were rehired into non-instructional capacities and others continue the teaching duties despite not meeting the qualifications."  Deposition, Ex. B, doc. 56-3, p. 38. Plaintiff marked only the blocks for discrimination due to race and age, and did not mark the "retaliation" or "religion" blocks, though as Sanchez provides, the crucial question is whether a basis to support such claims was alleged in the factual portion.  Therefore, the E.E.O.C. would logically have conducted an investigation only into (1) whether Plaintiff's qualifications met the requirements imposed by the No Child Left Behind Act, and (2) whether any person not of Plaintiff's race and or age was treated differently with respect to qualifications.  The E.E.O.C. would not have had any reason to investigate Plaintiff's specific claims of retaliation as set forth in her deposition, or religious discrimination, for that matter.  Plaintiff's Title VII claims of retaliation and discrimination due to her religion are unexhausted, and the court cannot reach the merits of these claims.  Ramon v. AT & T Broadband, 2006 WL 2519981, ** 5, 195 Fed.Appx. 860, *866 (11th Cir. Aug 31, 2006) (not selected for publication in the Federal Reporter, No. 05-15143).[5]

### The Merits of Plaintiff's Religious Discrimination Claim

_____

[5] A copy of this unpublished opinion is attached as Attachment B.

Plaintiff probably meant to dismiss any claim for relief due to religious

discrimination.  In any event, Plaintiff has presented no evidence to support such a

claim, and Defendant is entitled to summary judgment as to any such claim

**The Merits of Plaintiff's Retaliation Claim**

The merits of Plaintiff's claim have also considered.  While Defendant's

interpretation of the requirements of the No Child Left Behind Act appear to have been

correct, the court need not decide that question.

As explained above, to be successful on a *Title VII* retaliation claim, Plaintiff must

show that she "opposed any practice *made an unlawful employment practice by [Title*

*VII]*, or . . . made a charge, testified, assisted, or participated in any manner in an

investigation, proceeding, or hearing [thereunder]." Crawford v. Carroll, 529 F.3d 961,

970 (11th Cir. 2008), *quoting*, 42 U.S.C. § 2000e-3(a) (emphasis added).

Plaintiff has not alleged or shown these particular conditions precedent.  If

Defendant was not motivated by Plaintiff's race when it interpreted and applied the

requirements of the No Child Left Behind Act to Plaintiff's employment, Title VII has no

application at all.  Stated another way, Title VII only forbids adverse employment

decisions motivated by race and other considerations specifically forbidden by Title VII

(*e.g.*, gender, religion, national origin).  Title VII does not protect an employee from

other kinds of allegedly erroneous employment decisions.[6]   Thus, Defendant's

consideration of Plaintiff's opposition to what she believed to be an erroneous

interpretation of the requirements of the No Child Left Behind Act could not have

---

[6] Of course, if Defendant correctly interpreted the requirements of the No Child
Left Behind Act and applied those requirements equally to its employees, there would
be no violation of Title VII either.

generated any investigation by Defendant or the E.E.O.C. into a potential violation of

Title VII.  Opposition to an allegedly erroneous interpretation of the No Child Left Behind

Act, standing alone, is not an activity protected under Title VII.

Plaintiff's Title VII claim, as liberally construed from her deposition, both fails to

state a claim upon which relief may be granted and fails as a matter of proof.

**Conclusion**

For these alternative reasons, summary judgment will be granted in favor of

Defendant and Plaintiff's motion for summary judgment will be denied.

Accordingly, it is **ORDERED** that Plaintiff's motion for summary judgment, doc.

59, is **DENIED**, Defendant's motion for summary judgment, Doc. 55, is **GRANTED**, and

the Clerk is directed to enter judgment in Defendant's favor.

**DONE AND ORDERED** on June 16, 2009.


**s/    William C. Sherrill, Jr.**
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

ATTACHMENT A



251 Fed.Appx. 80                                                              Page 17
251 Fed.Appx. 80, 2007 WL 3024535 (C.A.3 (N.J.)), 229 Ed. Law Rep. 86
(Not Selected for publication in the Federal Reporter)
(Cite as: 251 Fed.Appx. 80, 2007 WL 3024535 (C.A.3 (N.J.)))

This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Third Circuit LAR, App. I, IOP 5.7. (Find CTA3 App. I, IOP 5.7)

United States Court of Appeals,
Third Circuit.
Harry DUNLEAVY, Appellant
v.
The State of NEW JERSEY; The New Jersey Division of Civil Rights; Rene Rovtar, individually; Lorraine Watson, individually; Susan Paletta, individually; J. Frank Vespa-Papaleo, individually; Sandra Alon; Steven Kramer; Rosalie Lamonte; Montville Board of Education; Montville Township.
No. 07-1058.

Submitted Under Third Circuit LAR 34.1(a) Oct. 9, 2007.
Filed: Oct. 16, 2007.

**Background:** Unsuccessful applicant filed action alleging that school's failure to hire him was result of age discrimination, in violation of state and federal statutes. The United States District Court for the District of New Jersey, Joseph A. Greenaway, Jr., J., 2007 WL 2793370, dismissed complaint, and applicant appealed.

**Holdings:** The Court of Appeals held that:
(1) No Child Left Behind Act (NCLBA) did not create private right of action;
(2) doctrine of issue preclusion barred applicant's age discrimination claim; and
(3) failure to hire applicant did not violate due process.

Affirmed.

West Headnotes

**[1]** Schools 345 ☜45

345 Schools
    345II Public Schools
        345II(C) Government, Officers, and District Meetings
            345k45 k. Administration of School Affairs in General. Most Cited Cases
No Child Left Behind Act (NCLBA) did not create private right of action. No Child Left Behind Act of 2001, § 101 et seq., 20 U.S.C.A. § 6301 et seq.

**[2]** Judgment 228 ☜713(1)

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

251 Fed.Appx. 80

251 Fed.Appx. 80, 2007 WL 3024535 (C.A.3 (N.J.)), 229 Ed. Law Rep. 86
(Not Selected for publication in the Federal Reporter)
(Cite as: 251 Fed.Appx. 80, 2007 WL 3024535 (C.A.3 (N.J.)))

228 Judgment
    228XIV Conclusiveness of Adjudication
      228XIV(C) Matters Concluded
        228k713 Scope and Extent of Estoppel in General
          228k713(1) k. In General. Most Cited Cases

Doctrine of issue preclusion barred applicant's claim that school district's failure to hire him violated Age Discrimination in Employment Act (ADEA), where applicant presented and lost on same ADEA claim in prior lawsuit that was decided on merits after he had full and fair opportunity to litigate it. Age Discrimination in Employment Act of 1967, § 2 et seq., 29 U.S.C.A. § 621 et seq.

[3] Constitutional Law 92 ⇐4198

92 Constitutional Law
    92XXVII Due Process
      92XXVII(G) Particular Issues and Applications
        92XXVII(G)8 Education
        92k4196 Employment Relationships
          92k4198 k. Rights and Interests Protected in General. Most Cited Cases

Schools 345 ⇐133.1(1)

345 Schools
    345II Public Schools
      345II(K) Teachers
        345II(K)1 In General
        345k133.1 Selection and Appointment

          345k133.1(1) k. In General. Most Cited Cases

Unsuccessful applicant did not have property right in teaching position that he sought, and thus school district's failure to hire him did not violate his due process rights. U.S.C.A. Const.Amend. 14.

*81 On Appeal From the United States District Court For the District of New Jersey, (D.C. Civ. No. 06-cv-00554), District Judge: Honorable Joseph A. Greenaway, Jr.Harry Dunleavy, Augusta, NJ, pro se.

Melissa T. Dutton, Office of Attorney General of New Jersey, Division of Law, Trenton, NJ, for Appellees.

Before: FISHER, ALDISERT and WEIS, Circuit Judges.

OPINION

PER CURIAM.

**1 Harry Dunleavy sued the State of New Jersey, the New Jersey Division of Civil Rights ("NJDCR"), Rene Rovtar (then Superintendent of Education for Morris County, New Jersey), Lorraine Watson (the manager of the NJDCR office in Paterson, New Jersey), Susan Paletta (a NJDCR investigator), and J. Frank Vespa-Papaleo (Director of the NJDCR).[FN1] Dunleavy purported to proceed under "the Civil Rights Acts, the No Child Left Behind Federal Act, the Age Discrimination Acts, the Freedom of Information Act (FOIA), and the Education Laws of the State of New Jersey." Supp.App. D01. He also cited 42 U.S.C. § 1983 and state law causes of

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

251 Fed.Appx. 80, 2007 WL 3024535 (C.A.3 (N.J.)), 229 Ed. Law Rep. 86
(Not Selected for publication in the Federal Reporter)
(Cite as: 251 Fed.Appx. 80, 2007 WL 3024535 (C.A.3 (N.J.)))

action, including specific provisions of New Jersey statutes. *Id.* at D01, D05-D07.

> FN1. The caption includes additional names of persons listed on the District Court docket, but those persons were neither named in Dunleavy's complaint nor served as defendants.

As Dunleavy described them in his complaint, the events giving rise to his lawsuit began in 2002, when he applied for a position as a high school Mathematics teacher with the Mount Olive Board of Education ("Mount Olive"). Mount Olive allegedly passed him over for employment as a high school Mathematics teacher in favor of less-qualified younger applicants. In response, Dunleavy filed a complaint with the NJDCR. Watson dismissed the charge of discrimination. Dunleavy subsequently cited FOIA to request information from the NJDCR. The NJDCR initially ignored his requests, but then provided him with some information, which led him to believe that Rovtar had colluded with **82** Mount Olive and NJDCR to deem legal Mount Olive's decision not to hire him. Dunleavy also took issue with Rovtar's decision to issue a substitute teaching licence to the candidate Mount Olive hired, and with Watson, Paletta, and Vespa-Papaleo's efforts to conceal the alleged illegality of Rovtar's action.

Defendants, as a group, moved to dismiss Dunleavy's complaint. Defendants argued that Dunleavy failed to state a federal claim and that the District Court should decline to exercise supplemental jurisdiction over the state law claims. Defendants also contended that collateral estoppel barred any claim under the Age Discrimination and Employment Act ("ADEA"), that the lack of a private

right of action doomed any claim under the No Child Left Behind Act ("NCLBA"), and that the defense of qualified immunity served as alternative basis for rejecting any claims under 42 U.S.C. § 1983. Dunleavy first filed a motion for leave to amend his complaint (attaching a proposed amended complaint to his motion), and then submitted a response to Defendants' motion. After Defendants responded to the former and replied to the latter, the District Court ruled.

The District Court liberally construed Dunleavy's complaint as raising claims under the Civil Rights Acts of 1991 and 1964, 42 U.S.C. § 2000e; 42 U.S.C. § 1981; NCLBA, 20 U.S.C. § 6301; FOIA, 5 U.S.C. § 552; ADEA, 29 U.S.C. § 621; and 42 U.S.C. § 1983, and held that Dunleavy had failed to state a claim upon which relief can be granted. The District Court declined to exercise supplemental jurisdiction over Dunleavy's state law claims. The District Court also denied Dunleavy's motion for leave to amend his complaint, concluding that amendment was futile. Dunleavy appeals.

**\*\*2** We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over a dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Lum v. Bank of Am.,* 361 F.3d 217, 223 (3d Cir.2004). We review the dismissal of the state law claims pursuant to 28 U.S.C. § 1367(c) and the decision to deny leave to amend for abuse of discretion. *Cf. De Asencio v. Tyson Foods, Inc.,* 342 F.3d 301, 311 (3d Cir.2003); *see Grayson v. Mayview State Hosp.,* 293 F.3d 103, 106 (3d Cir.2002). We agree with the District Court's characterization of Dunleavy's claims, and we will consider each claim in turn.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

251 Fed.Appx. 80

251 Fed.Appx. 80, 2007 WL 3024535 (C.A.3 (N.J.)), 229 Ed. Law Rep. 86
(Not Selected for publication in the Federal Reporter)
(Cite as: 251 Fed.Appx. 80, 2007 WL 3024535 (C.A.3 (N.J.)))

First, we agree with the District Court's decision to dismiss Dunleavy's claims under the "Civil Rights Acts." The Civil Rights Act of 1991 makes unlawful a failure or refusal to hire on the basis of race, color, religion, sex, or national origin. See 42 U.S.C. § 2000e-2(a). Dunleavy did not state a claim for an unlawful failure to hire in violation of the Civil Rights Act because he did not allege discrimination on the basis of race, color, religion, sex, or national origin. He claimed discrimination on the basis of age.

Any claim Dunleavy tried to bring under 42 U.S.C. § 1981 was appropriately dismissed for similar reasons. Section 1981 provides a remedy for discrimination on the basis of race, not age. 42 U.S.C. § 1981; Al-Khazraji v. St. Francis College, 784 F.2d 505, 514-518 (3d Cir.1986).

[1] We also conclude that the District Court was correct in dismissing Dunleavy's NCLBA claims because he had no private right of action under the statute. Congress must create a private right of action before an individual may bring suit to enforce federal law. See Alexander v. Sandoval, 532 U.S. 275, 286, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001). "The judicial task is to interpret the statute Congress has **83 passed to determine whether it displays an intent to create not just a private right but also a private remedy." Id. Every court that has considered whether the NCLBA evidences the unambiguous, see Gonzaga Univ. v. Doe, 536 U.S. 273, 286, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002), intent to create a private cause of action has decided it does not. See Alliance for Children, Inc. v. City of Detroit Pub. Schs., 475 F.Supp.2d 655, 658 (D.Mich.2007) (collecting cases). Under the sound analysis of the District Court, including its note of the relevant statutory enforcement provisions, we agree that

Dunleavy does not have a private cause of action under the NCLBA.

The District Court also properly dismissed Dunleavy's FOIA claims. In establishing "a policy of openness toward information within [the federal government's] control," S.Rep. No. 110-59, at 1 (2007), FOIA obligated federal agencies to make their documents, records, and publications available to the public. See 5 U.S.C. § 552. FOIA does not impose a similar obligation on state agencies such as NJDCR, the entity Dunleavy charged with ignoring his requests for information. Accordingly, Dunleavy did not state a FOIA claim.

**3 [2] Dunleavy's ADEA cause of action was barred by issue preclusion.[FN2] Issue preclusion, formerly known as collateral estoppel, is appropriately invoked when "(1) the identical issue was decided in a prior adjudication; (2) there was a final judgment on the merits; (3) the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom the bar is asserted had a full and fair opportunity to litigate the issue in question." Bd. of Trustees v. Centra, 983 F.2d 495, 505 (3d Cir.1992). Dunleavy's ADEA claim is that he was not hired as a Mathematics teacher by Mount Olive on the basis of his age. However, Dunleavy presented and lost on this same ADEA claim in a prior lawsuit which was decided on the merits after he had a full and fair opportunity to litigate it. See Dunleavy v. Mount Olive Twp., 183 Fed.Appx. 157 (3d Cir.2006) (per curiam ). Accordingly, his ADEA cause of action could not proceed.

FN2. Although the District Court considered different grounds for dismissal of the ADEA

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

251 Fed.Appx. 80, 2007 WL 3024535 (C.A.3 (N.J.)), 229 Ed. Law Rep. 86
(Not Selected for publication in the Federal Reporter)
(Cite as: 251 Fed.Appx. 80, 2007 WL 3024535 (C.A.3 (N.J.)))

claims, we affirm, as we may, on an alternative basis supported by the record. *See Erie Telecomm. v. Erie,* 853 F.2d 1084, 1089 (3d Cir.1988).

[3] To the extent Dunleavy presented a claim under 42 U.S.C. § 1983 (rather than merely citing the statute), his § 1983 action could not proceed, either. Among other infirmities with his pleading, Dunleavy did not allege that he was deprived of a right, privilege, or immunity secured by the Constitution or laws of the United States. 42 U.S.C. § 1983. Although he claimed that he did not get a job, Dunleavy did not have a property right in the teaching position that he sought. *Cf. Latessa v. New Jersey Racing Comm'n,* 113 F.3d 1313, 1318 (3d Cir.1997).

Because Dunleavy did not present actionable federal claims, the District Court did not abuse its discretion in declining to exercise jurisdiction over Dunleavy's state law claims. *See* 28 U.S.C. § 1367(c); *De Asencio,* 342 F.3d at 309.

We also hold that the District Court did not abuse its discretion in denying Dunleavy's motion for leave to amend his complaint because amendment would have been futile.[FN3] Leave to amend should be **84** granted until amendment is futile or inequitable. *See Grayson,* 293 F.3d at 106. Amendment is futile if the amended complaint cannot withstand a renewed motion to dismiss. *See Jablonski v. Pan American World Airways, Inc.,* 863 F.2d 289, 292 (3d Cir.1988). In his proposed amendment, Dunleavy sought to add the New Jersey Attorney General and the New Jersey Department of Education as defendants. He largely presented the same claims as in his original complaint, but he also added allegations that the newly named Defendants concealed information from

him and violated state and federal education laws to his detriment. As the District Court concluded, it appears that Dunleavy is complaining of perceived violations of the NCLBA and various state laws. In light of its contents, his amended complaint could not withstand a renewed motion to dismiss, as his original claims and his new NCLBA allegations would not state a claim upon which relief could be granted for the reasons given elsewhere in this opinion, and his state law claims would appropriately be dismissed pursuant to 28 U.S.C. § 1367(c). *See Tully v. Mott Supermarkets, Inc.,* 540 F.2d 187, 195-96 (3d Cir.1976).

FN3. Dunleavy could have amended his complaint once as a matter of course before a responsive pleading was served. *See* Fed.R.Civ.P. 15. Defendants' motion to dismiss was not a responsive pleading. *See, e.g., Centifanti v. Nix,* 865 F.2d 1422, 1431 n. 9 (3d Cir.1989). However, because Dunleavy filed a motion to amend, we treat this case as one in which leave to amend was required. *See id.* at 1431.

**4** In sum, the District Court acted properly in dismissing Dunleavy's complaint and denying Dunleavy leave to amend. Accordingly, we will affirm the judgment of the District Court.

C.A.3 (N.J.),2007.
Dunleavy v. New Jersey
251 Fed.Appx. 80, 2007 WL 3024535 (C.A.3 (N.J.)), 229 Ed. Law Rep. 86

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

. . . . . . . . . .                          ATTACHMENT B

Westlaw.

195 Fed.Appx. 860                                                           Page 22
195 Fed.Appx. 860, 2006 WL 2519981 (C.A.11 (Fla.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 195 Fed.Appx. 860, 2006 WL 2519981 (C.A.11 (Fla.)))

This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Eleventh Circuit Rules 36-2, 36-3. (Find CTA11 Rule 36-2 and Find CTA11 Rule 36-3)

United States Court of Appeals,
Eleventh Circuit.
Christine Annette RAMON, Plaintiff-Appellant,
v.
AT & T BROADBAND, a.k.a. Comcast Cable
Communications, Inc., Defendant-Appellee,
UNUM Provident, Defendant.
**No. 05-15143**
**Non-Argument Calendar.**

Aug. 31, 2006.

**Background:** Former employee, a Mexican-American female, brought a pro se suit against her former employer, claiming employment discrimination and retaliation under Title VII, the Americans with Disabilities Act (ADA), and the Equal Pay Act (EPA). The United States District Court for the Middle District of Florida granted summary judgment for the employer, and the employee appealed.

**Holdings:** The Court of Appeals held that:
(1) employee failed to exhaust administrative remedies as to retaliation and hostile work environment claims;
(2) employer's proffered reasons for challenged actions were not pretextual; and
(3) employee's health issues did not substantially limit a major life activity for ADA purposes.

Affirmed.

West Headnotes

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

195 Fed.Appx. 860

195 Fed.Appx. 860, 2006 WL 2519981 (C.A.11 (Fla.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 195 Fed.Appx. 860, 2006 WL 2519981 (C.A.11 (Fla.)))

**[1] Civil Rights 78 ⚯1516**

78 Civil Rights
    78IV Remedies Under Federal Employment Discrimination Statutes
        78k1512 Exhaustion of Administrative Remedies Before Resort to Courts
           78k1516 k. Scope of Administrative Proceedings; Like or Related Claims. Most Cited Cases
Neither a retaliation nor a hostile work environment claim could have reasonably been expected to grow out of allegations made by former employee in her Equal Employment Opportunity Commission (EEOC) charge, and thus, she failed to exhaust administrative remedies as to those claims; no allegation in her EEOC charge reasonably pointed to the kind of pervasive and oppressive conditions that would allow the court to conclude that she intended to have the EEOC investigate the workplace for a hostile work environment, and she did not check a retaliation box on the EEOC charge form or illustrate in the charge her claim that a relocation was a result of her complaints and her seeking short term disability (STD) leave. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**[2] Civil Rights 78 ⚯1548**

78 Civil Rights
    78IV Remedies Under Federal Employment Discrimination Statutes
        78k1543 Weight and Sufficiency of Evidence
           78k1548 k. Promotion or Transfer. Most Cited Cases
Former employee's inference that her transfer to a different division was based on discrimination was insufficient to establish a prima facie case of discrimination under Title VII. Civil Rights Act of 1964, § 703(a)(1), 42 U.S.C.A. § 2000e-2(a)(1).

**[3] Civil Rights 78 ⚯1137**

78 Civil Rights
    78II Employment Practices
        78k1137 k. Motive or Intent; Pretext. Most Cited Cases
Employer's proffered legitimate, nondiscriminatory reason for no longer paying an employee a bilingual pay differential after a transfer to a different division, i.e., that no one in that division received extra money for bilingual services, was not a pretext for race or national origin discrimination violating Title VII. Civil Rights Act of 1964, § 703(a)(1), 42 U.S.C.A. § 2000e-2(a)(1).

**[4] Civil Rights 78 ⚯1137**

78 Civil Rights
    78II Employment Practices
        78k1137 k. Motive or Intent; Pretext. Most Cited Cases
Employer's proffered legitimate, nondiscriminatory explanation for terminating an employee without allowing a three-day grace period, i.e., that there was no policy establishing such a grace period, was not a pretext for race or national origin discrimination violating Title VII. Civil Rights Act of 1964, § 703(a)(1), 42 U.S.C.A. § 2000e-2(a)(1).

**[5] Civil Rights 78 ⚯1218(3)**

78 Civil Rights

195 Fed.Appx. 860

195 Fed.Appx. 860, 2006 WL 2519981 (C.A.11 (Fla.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 195 Fed.Appx. 860, 2006 WL 2519981 (C.A.11 (Fla.)))

78II Employment Practices
        78k1215 Discrimination by Reason of Handicap, Disability, or Illness
            78k1218 Who Is Disabled; What Is Disability
                78k1218(3) k. Particular Conditions, Limitations, and Impairments. Most Cited Cases
Health issues of a former employee allegedly suffering from costochondritis did not substantially limit a major life activity, as required for her to establish a prima facie case of disability discrimination under the Americans with Disabilities Act (ADA). Americans with Disabilities Act of 1990, § 3(2)(A), 42 U.S.C.A. § 12102(2)(A).

*861 John Winter, San Antonio, TX, for Plaintiff-Appellant.

Steven Michael Staes, Cheryl Barnes Legare, Seyfarth Shaw LLP, Atlanta, GA, for Defendant-Appellee.

Appeal from the United States District Court for the Middle District of Florida. D.C. Docket No. 03-00556-CV-J-20-HTS.

Before TJOFLAT, BIRCH and BLACK, Circuit Judges.

PER CURIAM:

**1 Christine Annette Ramon, *pro se* before the district court and represented by counsel on appeal, challenges the district court's grant of summary judgment for AT & T Broadband, her former employer, on employment discrimination and retaliation claims brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.,* and the Equal Pay Act ("EPA") of 1963, 29 U.S.C. § 206(d). The district court ruled that Ramon failed to exhaust her administrative remedies as to her hostile work environment and retaliation claims, found that some factual allegations could not be considered because they were time barred, and concluded that Ramon had not refuted *862 AT & T's legitimate reasons for the claimed discriminatory actions and that the Ramon had failed to connect her health issues to an impairment of a life function, as required by the ADA. We AFFIRM.

## I. BACKGROUND

A. *Allegations and Evidence Introduced To Support Summary Judgment*

Ramon, a Mexican-American female, filed a *pro se* complaint for employment discrimination and retaliation under against her employer, AT & T Broadband.[FN1] Ramon indicated in her complaint that she was raising claims under Title VII of the Civil Rights Act of 1964, because she was discriminated against and harassed based on her race, sex, national origin, and disability. She also claimed that AT & T retaliated against her for complaining of discrimination by terminating her employment, harassing her, and failing to provide security despite AT & T's harassment policies.

FN1. Ramon also brought claims against UNUM Provident, AT & T's disability benefits administrator, but the district court dismissed the claims against UNUM, and Ramon does not challenge that dismissal on appeal.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

195 Fed.Appx. 860

195 Fed.Appx. 860, 2006 WL 2519981 (C.A.11 (Fla.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 195 Fed.Appx. 860, 2006 WL 2519981 (C.A.11 (Fla.)))

Ramon alleged that she began working at AT & T in May 2000 as a Provisioning Specialist. In that position, Ramon, as a bilingual employee, provided translating services and received a bilingual pay differential. Ramon was later transferred to the Broadband Service Assurance Center ("BSAC"), where she no longer received bilingual pay. She alleged that her supervisor told her that the end to her bilingual pay was due to cutbacks but she still would have to perform translating services or risk being terminated. Ramon also alleged that, throughout her employment with AT & T, she suffered from many chronic health issues. Through 2001, Ramon was on and off of short term disability ("STD") leave.

AT & T moved for summary judgment on all the claims raised in Ramon's complaint. AT & T argued that Ramon's claims relating to discrimination, harassment, and retaliation prior to 1 October 2005 were time barred because those acts took place more than 300 days before she filed her discrimination charge with the Texas Commission on Human Rights.[FN2] AT & T also argued that Ramon failed to exhaust her administrative remedies as to her claims of harassment, race discrimination, and retaliation because those claims exceeded the EEOC charge. Next, with respect to Ramon's disability discrimination claim, AT & T maintained that Ramon could not establish that: (1) she was disabled during the relevant time frame; (2) she was qualified to recover under the ADA; or (3) she was discriminated against based on her disability. Finally, AT & T argued that Ramon had failed to allege facts supporting an Equal Pay Act violation.

> FN2. Ramon initiated this case in Texas, but it subsequently was transferred to the Middle District of Florida.

**\*\*2** AT & T submitted a copy of Ramon's 1 August 2002 EEOC charge. In the charge, Ramon indicated that she was raising claims of discrimination based on sex, national origin, and disability, as well as a claim under the Equal Pay Act. She alleged that, on or about 13 October 2001, she was informed that she would no longer receive bilingual pay because of cutbacks, but she would have to continue to provide translation services. Additionally, she alleged that she was denied STD leave when she was one month away from becoming eligible even though AT & T could have allowed the leave under its emergency policy.**\*863** A white employee with less seniority was granted STD leave under the emergency policy. Ramon also alleged that she was informed that she had to return to work on 14 March 2002 and was terminated on that date without being granted a three-day grace period, while a white employee was allowed to return to work on the third day and quit her job, and the employee received the same severance package as employees who had been laid off, even though she had yet not been employed at AT & T for two years.

AT & T also submitted a declaration prepared by Jerry D. Thomas, Human Resources Manager at AT & T. He stated that Ramon transferred to the BSAC division in August 2001. Ramon no longer received a bilingual pay differential after the transfer because employees, regardless of gender, in the BSAC division do not receive bilingual pay. In October 2001, Ramon went on STD leave. However, UNUM notified AT & T that, as of 13 November 2001, Ramon's STD benefits would be terminated because the documentation provided by her medical providers did not support her leave request. On 22 February 2002, Thomas sent Ramon a letter informing her that she must either file for FMLA relief or return to work by 14 March 2002. The letter did not include a three-day grace period because AT & T has no such

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

195 Fed.Appx. 860, 2006 WL 2519981 (C.A.11 (Fla.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 195 Fed.Appx. 860, 2006 WL 2519981 (C.A.11 (Fla.)))

provision in its leave policy. When Ramon did not return to work, Thomas inquired whether she had submitted her FMLA paperwork and learned that she had failed to provide the medical certification required for approval of FMLA leave. As a result, Ramon's employment was terminated effective 15 March 2002.

Thomas further stated that he was aware that Doreen Caffrey filed a charge of discrimination with the EEOC immediately following the initiation of her leave and STD benefits in June 2001. The terms and conditions of Caffrey's leave and termination were determined in the context of a confidential mediated settlement with the EEOC.

In support of her opposition, Ramon submitted several medical reports, mostly related to examinations that took place after she left AT & T. A portion of a report entitled "Discharge Instructions (cont.)," dated 18 April 2001, indicated that Ramon suffered from costochondritis, which causes chest pain due to an inflammation of the cartilage joining the ribs to the breast bone. Exh. 2-8 at unnumbered 8. The report stated that this condition is not caused by heart or lung problems, and, although the exact cause is not known, it often occurs during times of emotional stress and is not dangerous. Further, an examination that took place on 26 February 2002, revealed that she had evidence of chronic large bulla on the right side, but she was not having symptoms associated with that condition.

B. *The District Court's Ruling*

**3 The district court granted AT & T's motion for summary judgment. First, the district court concluded that, while a claim of race discrimination reasonably

grew out of the claim of national origin discrimination raised in her EEOC charge, Ramon's claims for hostile work environment and retaliation were barred because "[n]o matter how leniently the Court reads her EEOC charge," she alleged nothing related to such claims. R2-87 at 5-6. Next, the district court found that Ramon's claim for race discrimination with respect to the April 2001 denial of STD leave was time barred because she failed to file her 1 August 2002 EEOC charge within 300 days of that employment act. With respect to Ramon's Title VII sex discrimination claim, the court found that she had *864 failed to dispute AT & T's legitimate, nondiscriminatory reason for ceasing to pay her a bilingual pay differential when she was transferred to BSAC, namely that BSAC did not provide such a pay differential to any employees, regardless of sex. Similarly, the district court found that Ramon had failed to meet her burden under the Equal Pay Act of showing that her job and the job of the male employee required equal skill, effort, responsibility, or are conducted under similar conditions or that AT & T had illegally discriminated against Ramon where the pay structure for the Provisional Department was different from that of BSAC.[FN3]

FN3. Ramon makes no argument concerning the district court's grant of summary judgment in favor of AT & T on her EPA claim. Accordingly, her EPA claim is deemed abandoned. *Malowney v. Fed. Collection Deposit Group,* 193 F.3d 1342, 1345 (11th Cir.1999).

Next, the district court found that Ramon had failed to show that AT & T had discriminated against her based on her race or national origin by terminating her without giving her a three-day grace period, where no such policy existed. The court noted that,

195 Fed.Appx. 860

195 Fed.Appx. 860, 2006 WL 2519981 (C.A.11 (Fla.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 195 Fed.Appx. 860, 2006 WL 2519981 (C.A.11 (Fla.)))

similar to Doreen Caffrey, the white employee she claims was treated more favorably, Ramon was given the chance to come back to work when she was informed by letter that she could either get approval for FMLA leave or return to work by 14 March 2002. Additionally, the district court found no evidence that AT & T treated employees of different races more favorably when terminating them or provided a three-day grace period and noted that the specifics of Caffrey's termination were part of a confidential mediation settlement with the EEOC and were not the product of any uniform employment practice of allowing a three-day grace period. Finally, the district court found that Ramon failed to offer any proof or argument as to how her condition constituted a disability under the ADA or how AT & T discriminated against her on that basis.

C. *Ramon's Arguments on Appeal*

Ramon argues that her claims for hostile work environment and **retaliation** were not outside the **scope** of her **EEOC** charge, claiming that those claims were related to, or grew out of, her **EEOC** charge. Her EEOC charge stated that she was told that she was losing her bilingual pay although she would have to continue to provide translation services. Ramon maintains that an inference could be made from this claim that her pay was reduced in retaliation for her complaints to supervisors about discriminatory acts and for seeking short-term disability leave. She argues that her hostile work environment claim can be inferred from her EEOC charge, because her allegations with respect to the disparity in treatment regarding her pay and disability leave and that her coworkers indicate that her work environment was harsher, more strict, and less rewarding than the environment of her coworkers.

**\*4** Ramon argues that the district court erred by granting summary judgment to AT & T on Ramon's Title VII discrimination claims. Specifically, she maintains that the district court, by finding that Ramon failed to dispute AT & T's proffered legitimate, non-discriminatory reason, did not review Ramon's pleadings in light of her *pro se* status and lack of legal training. She argues that she was subject to the transfer to the BSAC and the resulting pay cut was a result of gender discrimination because a male employee within BSAC and a male employee who remained in the Provisioning Department continued **\*865** to receive the pay differential.[FN4] Ramon also contends that the district court erred by granting summary judgment on her race/national origin discrimination claims because it focused on her claim regarding her termination without the three-day grace period, even though she also asserted that she was treated differently than white employees with respect to the administration of STD leave.

> FN4. We could find nothing in the record to support the contention that a male employee in the BSAC received extra pay for bilingual services.

Finally, Ramon argues that she established a *prima facie* case of discrimination under the ADA. She maintains that UNUM Provident's finding that Ramon was not limited due to asthma or other cardiopulmonary disorders was not conclusive as to whether she was disabled because it was based on a review of various reports and not an examination of Ramon.[FN5] She argues that her own medical reports were in direct contradiction with the UNUM assessment, creating a genuine issue of material fact as to whether she was disabled during the relevant time period.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

195 Fed.Appx. 860

195 Fed.Appx. 860, 2006 WL 2519981 (C.A.11 (Fla.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 195 Fed.Appx. 860, 2006 WL 2519981 (C.A.11 (Fla.)))

FN5. UNUM Provident administered AT & T's disability benefits.

## II. DISCUSSION

"A district court's grant of summary judgment is reviewed de novo." *Rojas v. Florida,* 285 F.3d 1339, 1341 (11th Cir.2002) (per curiam). A court shall grant summary judgment when the evidence before it shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed.R.Civ.P.* 56(c). "When deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." *Rojas,* 285 F.3d at 1341-42 (citation and quotations omitted). Additionally, while *pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys, "a pro se litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to [her] case in order to avert summary judgment." *Brown v. Crawford,* 906 F.2d 667, 670 (11th Cir.1990).

A. *Jurisdiction Over Nonexhausted Claims and Time Barred Allegations*

[1] Prior to filing a Title VII action, a plaintiff first must exhaust her administrative remedies by filing a charge of discrimination with the EEOC. *Gregory v. Ga. Dep't of Human Res.,* 355 F.3d 1277, 1279 (11th Cir.2004) (per curiam). "For a charge to be timely in a deferral state such as Florida, it must be filed within 300 days

of the last discriminatory act." *EEOC v. Joe's Stone Crabs, Inc.,* 296 F.3d 1265, 1271 (11th Cir.2002) (per curiam); 42 U.S.C. § 2000e-5(e)(1).

**5 A plaintiff's judicial complaint is limited by the scope of the EEOC investigation that "can reasonably be expected to grow out of the charge of discrimination." *Gregory,* 355 F.3d at 1280. However, "the scope of an EEOC complaint should not be strictly interpreted." *Id.* In order to establish a hostile work environment claim, the plaintiff must show that "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' " *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993) (citations omitted).

*866 Ramon has pointed to no allegation in her EEOC charge that reasonably points to the kind of pervasive and oppressive conditions that would allow us to conclude that she intended to have the EEOC investigate the workplace for a hostile work environment. Likewise, Ramon did not check the retaliation box on the EEOC charge form and failed to illustrate in the charge her claim later made in the complaint that the relocation from the provisioning department to the BSAC was a result of her complaints and STD leave seeking. Because neither a retaliation nor a hostile work environment claim could have reasonably been expected to grow of the allegations made by Ramon in her EEOC charge, the district court did not err by finding that she failed to exhaust those claims.

The Supreme Court has recognized that Title VII's statute of limitations for filing EEOC charges works

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

195 Fed.Appx. 860

195 Fed.Appx. 860, 2006 WL 2519981 (C.A.11 (Fla.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 195 Fed.Appx. 860, 2006 WL 2519981 (C.A.11 (Fla.)))

differently for disparate treatment and hostile environment cases. *See Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 115, 122 S.Ct. 2061, 2073-74, 153 L.Ed.2d 106 (2002). "A discrete ... discriminatory act 'occurred' on the day that it 'happened.' A party, therefore, must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it." *Id.* at 110, 122 S.Ct. at 2070-71. Discrete acts that fall within the statutory period do not make related acts that fall outside the period timely. *Id.* at 113, 122 S.Ct. at 2072. On the other hand, hostile environment claims, which are based on the cumulative effects of individual acts, collectively may "constitute 'one unlawful employment practice.' " *Id.* at 117, 122 S.Ct. at 2074.

We consider Ramon's claims for racial discrimination based on acts that occurred prior to 5 October 2001 to be time barred. Ramon maintains that the pattern of wrongful acts should be treated as a single unlawful practice as opposed to discrete acts of racial discrimination. She states that this pattern of discriminatory conduct by her coworkers and supervisors gave rise to her hostile work environment claim. However, because any putative hostile work environment claim was not exhausted in an EEOC charge, the district court did not err by finding that Ramon's allegations of discrimination prior to 5 October 2001 were time barred, as falling outside of the 300-day statutory period.[FN6]

> FN6. For this reason, we have omitted from the background section of this opinion alleged discrete acts of discrimination that we may not consider.

B. *Ramon's Title VII Claims*

**\*\*6** Title VII makes it unlawful for an employer to discriminate against an employee based on her race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). A plaintiff shows that she was discriminated against in violation of Title VII by establishing that "(1) she is a member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated employees who are not members of the plaintiff's class more favorably; and (4) she was qualified for the job or job benefit at issue." *Rice-Lamar v. City of Fort Lauderdale, Fla.,* 232 F.3d 836, 842-43 (11th Cir.2000). Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to rebut the inference of intentional discrimination by presenting legitimate, nondiscriminatory reasons for its employment action. *Gillis v. Ga. Dep't of Corr.,* 400 F.3d 883, 888 (11th Cir.2005). Where the defendant carries its burden, the plaintiff must then "come forward with specific evidence demonstrating that the reasons given by defendant were a pretext for discrimination." *Id.*

**\*867** [2][3][4] The district court did not err by granting summary judgment to AT & T on Ramon's gender discrimination claim because her inference that the transfer to a different division was based on discrimination was insufficient to establish a *prima facie* case of discrimination, and she presented no evidence refuting AT & T's proffered legitimate, nondiscriminatory reason for no longer paying Ramon the bilingual pay differential after the transfer, that is, no one in the BSAC received extra money for bilingual services. Additionally, the district court did not err by granting summary judgment to AT & T on Ramon's race/national origin discrimination claims because Ramon failed to rebut AT & T's explanation for terminating her without allowing a three-day grace period-that there was no policy establishing such a grace period-and any evidence regarding whether AT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

195 Fed.Appx. 860

195 Fed.Appx. 860, 2006 WL 2519981 (C.A.11 (Fla.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 195 Fed.Appx. 860, 2006 WL 2519981 (C.A.11 (Fla.)))

& T employees were treated differently in the administration of STD leave is time barred because those incidents happened before 1 October 2005.

C. *Ramon's ADA Claims*

[5] To establish a *prima facie* case of disability discrimination under the ADA, a plaintiff must show "(1) a disability, (2) that she was otherwise qualified to perform the job, and (3) that she was discriminated against based upon the disability." *Cleveland v. Home Shopping Network, Inc.,* 369 F.3d 1189, 1193 (11th Cir.2004). The ADA defines disability as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A). Ramon has failed to submit evidence sufficient to survive summary judgment that her health issues substantially limited a major life activity. As such, she failed to establish a *prima facie* case of disability discrimination under the ADA, and the district court did not err by granting summary judgment on that claim.

### III. CONCLUSION

**7** Ramon has challenged the district court's grant of summary judgment for AT & T on her employment discrimination and retaliation claims. We agree with the district court that Ramon failed to exhaust administrative remedies as to some claims and that some factual allegations could not be considered as time barred. Concluding that Ramon has not refuted AT & T's legitimate reasons for the claimed discriminatory actions and that Ramon has failed to connect her health issues to an impairment of a life function, we **AFFIRM.**

C.A.11 (Fla.),2006.
Ramon v. AT & T Broadband
195 Fed.Appx. 860, 2006 WL 2519981 (C.A.11 (Fla.))

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.